SEYFARTH SHAW LLP
Christian J. Rowley (SBN 187293)
*crowley@seyfarth.com*
Andrew M. McNaught (SBN 209093)
*amcnaught@seyfarth.com*
Michael W. Stevens (SBN 258042)
*mwstevens@seyfarth.com*
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendant
AARON'S, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMINDA SEVILLA, individually and on behalf of all other persons similarly situated, and on behalf of the general public,<br><br>    Plaintiff,<br><br>v.<br><br>AARON'S, INC., a Georgia corporation; and DOES 1 through 30, inclusive,<br><br>    Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>**[28 U.S.C. §§ 1332, 1446, 1453]**<br><br>[Los Angeles County Superior Court Case No. BC659590]<br><br>[*Filed concurrently with Civil Case Cover Sheet, Declaration of Keith Cooper, Certificate of Notice of Interested Parties; Corporate Disclosure Statement*]<br><br>Complaint Filed: April 28, 2017 |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

 **PLEASE TAKE NOTICE** that Defendant AARON'S, INC. ("Defendant" or "Aaron's") hereby removes the above-captioned case from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California, asserting original jurisdiction under 28 U.S.C. §§ 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA") and removal jurisdiction under 28 U.S.C. §§ 1441(a), 1446, and 1453.

## PLEADINGS, PROCESSES, AND ORDERS

 1. On April 28, 2017, Plaintiff Arminda Sevilla filed a Class Action Complaint for Damages ("Complaint") in the Superior Court of California, County of Los Angeles entitled: *Arminda Sevilla, individually and on behalf of all other persons similarly situated, and on behalf of the general public, Plaintiff v. Aaron's Inc., a Georgia Corporation, and Does 1 through 30, inclusive, Defendants*, Case Number BC659590. A true and correct copy of the Summons and Complaint is attached as Exhibit A.

 2. The Complaint purports to allege seven claims for relief. Plaintiff bases her claims on alleged underpayment of overtime due to a failure to properly calculate the regular rate of pay, failure to reimburse necessary business expenses, failure to provide meal and rest breaks, failure to pay all wages owed on termination, failure to provide accurate itemized wage statements, and alleged violations of the Unfair Competition Law ("UCL"). (*See*, Compl.)

 3. The Complaint seeks to certify two classes. The first class is "All current and former employees employed by DEFENDANTS in the State of California who were compensated by the hour within four (4) years of the date of commencement of this action through the date of the final disposition ("the Hourly Class"). (Compl. at ¶49(a).) The second class is "All former employees of DEFENDANTS in California that did not receive the timely payment of wages due and owing upon the termination of their employment within four (4) years of the final date of the final disposition of this action

(the "Waiting Time Class")." (*Id.* at ¶49(b).)[1]

4. On May 30, 2017, Defendant filed an Answer to Plaintiff's Complaint in the Superior Court of California, County of Los Angeles. A true and correct copy of the answer is attached as Exhibit B.

5. Attached as Exhibit C are the remaining documents served on Defendant.

## TIMELINESS OF REMOVAL

6. Plaintiff served the Summons and Complaint on May 1, 2017. This Notice of Removal is timely because it is filed within thirty (30) days of the service upon Defendant of a copy of the Summons and Complaint. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353-56 (1999) (thirty-day removal period begins when defendant is formally served).

## JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")

7. This Court has original subject-matter jurisdiction over this action under CAFA, codified in relevant part in 28 U.S.C. section 1332(d)(2). As set forth below, this action is properly removable pursuant to 28 U.S.C. section 1441(a) because the alleged amount in controversy exceeds $5,000,000, exclusive of interest and costs, and is a purported class action in which a class member is a citizen of a State different from that of Defendant (28 U.S.C. §§ 1332(d)(2) & (6)), and the number of putative class members

---

[1] Plaintiff also asserts that six subclasses exist. Those subclasses are: "(a) All Hourly Class members who were paid overtime premiums that were improperly calculated due to DEFENDANTS' failure to include all required compensation when calculating the regular rate of pay ("Overtime Subclass); (b) All hourly Class members who have worked five (5) and/or ten (10) in a workday without being provided with an uninterrupted thirty (30) minute meal period and denied compensation for meal break violations under California Labor sections 226.7, 512, and various IWC Wage Orders ("Meal Break Subclass"); (c) All Hourly Class members who worked three and a half (3 1/2) hours or more without being authorized or permitted to take a paid duty-free uninterrupted ten (10) minute rest break for every four hours of work or major fraction thereof and denied compensation for rest break violations under California Labor Code section 226.7 and various IWC Wage Orders ("Rest Break Subclass"); (d) All Hourly Class members who incurred necessary business-related expenses and costs that were not reimbursed ("Business Expense Reimbursement Subclass"); (e) All Hourly Class members who were not provided with accurate itemized wage statements ("Itemized Wage Statement Subclass"); and (f) All Hourly Class members who were not provided with final wages at the time of separation of employment ("Waiting Time Penalties Subclass"). (Compl. ¶50(a)-(f).)

is greater than 100. *See* 28 U.S.C. §§ 1332(d)(5)(B).

## I. THERE IS MINIMAL DIVERSITY FOR REMOVAL UNDER CAFA

8. CAFA requires that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

### A. Plaintiff Is a Citizen of California

9. For diversity purposes, a person is a "citizen" of the state in which she is domiciled. *See Kantor v. Wellesly Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 29 F.3d 514, 520 (10th Cir. 1994). Defendant is informed and believes, and on that basis alleges, that Plaintiff was at all relevant times, and still is, domiciled in California. Plaintiff's last known address is in the city of Cathedral City, California. (*See* Declaration of Keith Cooper ("Cooper Decl.") at ¶10.) Thus, Plaintiff is, and has been at all times since the institution of this action, a citizen of the State of California.

### B. Defendant Is Not a Citizen Of California

10. The appropriate test to determine a corporation's principal place of business is the "nerve center" test. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.*

11. Defendant is incorporated under the laws of the State of Georgia. (Cooper Decl. at ¶11.) Defendant's principal place of business is also located in Atlanta, Georgia, which is where Defendant's headquarters and executive offices are located, and where Defendant's high-level officers direct, control, and coordinate its activities. (*Id.*)

12. Therefore, under *Hertz*, Defendant is a citizen of the State of Georgia.

### C. Doe Defendants' Citizenship Must Be Disregarded

13. Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d

1209, 1213 (9th Cir. 1980) ("[U]known defendants sued as "Does" need not be joined in a removal petition."). Thus, the existence of Doe defendants 1 through 30, inclusive, does not deprive this Court of jurisdiction.

14. Accordingly, pursuant to 28 U.S.C. section 1332(c), Plaintiff and Defendant have diverse citizenship. Therefore, CAFA diversity is satisfied because at least one Plaintiff is diverse from Defendant.

**D.     There Are More Than 100 Putative Class Members**

15. CAFA requires that the aggregated number of members of all proposed classes in a complaint be at least 100. *See* 28 U.S.C. § 1332(d)(5)(B).

16. As mentioned, Plaintiff's purported Hourly Class seeks to certify a class consisting of "All current and former employees employed by DEFENDANTS in the State of California who were compensated by the hour within four (4) years of the date of commencement of this action through the date of the final disposition ("the Hourly Class")." (Compl. at ¶49(a).)

17. From April 28, 2013 to May 26, 2017, there were 988 employees who fall within the putative class defined by Plaintiff. (Cooper Decl. at ¶5.) Thus, on this basis alone, the requisite number of at least 100 putative class members is satisfied.

18. Moreover, Plaintiff alleges a purported Waiting Time Class consisting of "All former employees of DEFENDANTS in California that did not receive the timely payment of wages due and owing upon the termination of their employment within four (4) years of the final date of the final disposition of this action (the "Waiting Time Class")." (Compl. at ¶49(b).)

19. From April 28, 2014 to May 26, 2017, there were 606 terminated employees that fall within the above class definition. (Cooper Decl. at ¶7.)[2] Thus, even including only the Waiting Time Class, the required number of at least 100 putative class members is met here as well.

---

[2] Plaintiff's class definition is overbroad as it includes employees beyond the statute of limitations for a claim under Labor Code § 203, which cannot be extended by the UCL claim.

5
NOTICE OF REMOVAL / CASE NO.
39270098v.1

**E.     Plaintiff's Claims Place More Than $5,000,000 In Controversy**

20.     While Defendant denies any liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000.  All calculations supporting the amount in controversy are based on the Complaint's allegations (along with other documents as identified herein), assuming without any admission, the truth of the allegations, and assuming liability (which Defendant disputes) is established.  Likewise, these calculations are based on the putative classes alleged in the Complaint, and in no way indicate that class treatment is appropriate in this case, or that Plaintiff has standing to represent any such class, or that the classes proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.  Defendant expressly reserves the right to challenge Plaintiff's claims, adequacy and standing to represent any class, class definitions, and calculation of damages in all respects.  However, for purposes of removal, Defendant bases its calculations on the allegations, facts known to Defendant, and class definitions pleaded by Plaintiff.

21.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  *See* 28 U.S.C. § 1332(d)(6).  Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42.  Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a

federal court if properly removed by any defendant.").

22. To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must only make a plausible claim that the amount in controversy exceeds that amount. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014).

23. As Plaintiff has not alleged her particular damages, reasonable estimates of the alleged amount in controversy are appropriate. As such, Courts may assume a 100% violation rate in calculating the amount in controversy for removal purposes when a more precise calculation is not apparent on the face of the complaint. *See, e.g., See, e.g., Coleman v. Estes Express Lines, Inc.*, 2010 U.S. Dist. LEXIS 79772 at *18-19 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate"); *Muniz v. Pilot Travel Centers LLC.*, Case No. S-07-0325, 2007 WL 1302504, * at 4 (E.D. Cal. May 1, 2007) ("Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought" to indicate a violation rate smaller than 100%).

24. Moreover, a plaintiff cannot evade federal jurisdiction by alleging that the amount in controversy falls below the jurisdictional minimum. *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1350 (2013); *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 978-82 (9th Cir. 2013).

### 1. Rest Break Claims

25. In her Rest Break claim, Plaintiff alleges that Defendant did not provide her or the putative class members with rest breaks and required them to work through their entire shift without any rest breaks. (Compl. at ¶74.) Plaintiff also alleges that Defendant failed to maintain lawful rest break policies and required class members to work through their breaks. (*Id*. at ¶4.) Plaintiff further says that Defendant maintained a system-wide policy of failing to pay employees rest break premiums for missed or shortened breaks.

(*Id*. at ¶25.) As a result of these allegations, assuming a 100% violation rate is reasonable.

26. As to this claim, Plaintiff seeks to certify a class covering the last four years. The average hourly rate for Defendant's hourly non-exempt employees April 28, 2013 to May 26, 2017 is $12.22. (Cooper Decl. at ¶6.) The approximate number of workweeks for these employees for that same period was 56,439. (*Id*.) Conservatively assuming that each putative class member missed two rest periods per workweek, the putative class rest period damages from April 28, 2013 to May 26, 2017 would be approximately $1,379,369.16 [$12.22/hour x 2 violations x 56,439 workweeks]. Thus, a conservative estimate of the amount in controversy for Plaintiff's rest break claims alone is approximately **$1,379,369.16.**[3]

### 2. Meal Break Claim

27. In her Meal Break claim, Plaintiff alleges that Defendant did not provide her or the putative class members with time to take off-duty thirty (30) meal breaks during their work shifts. (Compl. at ¶82.) Plaintiff goes on to say that this "regularly" happened because Plaintiff and the putative class were required to work during or through their meal breaks. (*Id*.) Plaintiff also alleges that Defendant failed to maintain lawful meal break policies and again says that Defendant required class members to work through their breaks. (*Id*. at ¶4.) Plaintiff further says that Defendant maintained a system-wide policy of failing to pay employees meal break premiums for missed or shortened breaks. (*Id*. at ¶25.) As a result of these allegations, assuming a 100% violation rate is also reasonable.

28. As to this claim, Plaintiff seeks to certify a class covering the last four years. The average hourly rate for Defendant's hourly non-exempt employees April 28, 2013 to May 26, 2017 is $12.22. (Cooper Decl. at ¶6.) The approximate number of workweeks for these employees for that same period was 56,439. (*Id*.) Conservatively assuming that

---

[3] Given Plaintiff's allegations, it would be plausible to assume a 100% violation rate. Thus, assuming 5 missed rest breaks each workweek, the damages for Plaintiff's rest break claim would be $3,448,422.90.

each putative class member missed two meal periods per workweek, the putative class rest period damages from April 28, 2013 to May 26, 2017 would be approximately $1,379,369.16 [$12.22/hour x 2 violations x 56,439 workweeks]. Thus, a conservative estimate of the amount in controversy for Plaintiff's meal break claims alone is approximately **$1,379,369.16.**[4]

### 3. Waiting Time Penalties

29. Plaintiff's sixth claim for relief alleges that Defendant must pay waiting time penalties under Labor Code § 203 for failure to pay all wages owed upon termination. (Compl. at ¶¶91-103.) Labor Code section 203 authorizes penalties of one day of pay for each day the employer fails to pay the wages due for a maximum of 30 days. Cal. Lab. Code § 203(a). Plaintiff seeks this relief on behalf of the "Waiting Time Class" — which Plaintiff improperly defines as four years prior to the filing of the lawsuit because the proper statute of limitations is three years. (Compl. at ¶49(b).) From April 28, 2014 through May 26, 2017, there were approximately 606 terminated putative class members. (Cooper Decl. at ¶7.) The average hourly rate for those employees was approximately $12.14. (*Id*. at ¶8.) Accordingly, although Defendant disputes liability, a reasonable estimate of the amount in controversy for section 203 penalties is **$1,745,208.00** [$12.00/hour x 8 hours/day x 30 days x 606 class members].

### 4. Inaccurate Wage Statement Claim

30. Plaintiff also alleges that Defendant failed to provide her and the putative class with accurate wage statements because of her alleged overtime and meal/rest break claims. (Compl. at ¶¶85-90.) Given Plaintiff's allegations regarding her meal and rest break claims, it is reasonable to assume a 100% violation rate for the applicable statute of limitations, which is one-year (even though Plaintiff improperly seeks to certify a class of four years). The total number of hourly employees for Defendant in California from April 28, 2016 to May 26, 2017 is 485. (Cooper Decl. at ¶9.) The total number of pay

---

[4] As with the rest break claim, given Plaintiff's allegations, it would be plausible to assume a 100% violation rate. Thus, assuming 5 missed meal breaks each workweek, the damages for Plaintiff's meal break claim would be $3,448,422.90.

1  periods for these employees during this time period is 7,129. (*Id*.) The penalties under Labor Code § 226 are $50 for the first violation and $100 for each subsequent violation. Assuming a 100% violation rate, a reasonable estimate for Plaintiff's inaccurate wage statement claim would be **$688,650.00** [ (485 x $50) + (6,644 x $100)].

### 5. Regular Rate Overtime Claim

31. Plaintiff alleges that Defendant violated the overtime provisions of the California Labor Code because it supposedly failed to include commissions and bonuses in the regular rate of pay used to calculate overtime payments made to Plaintiff and the putative class members. (Compl. at ¶¶ 63(a).) But her allegations as to the value of these claims are unclear. Needless to say, Plaintiff's overtime claims only increase the amount in controversy—even based on minimal assumptions.

32. For example, assuming the following low figures for the Hourly Class, one hour of overtime per week and an additional $1.00 in the regular rate, the California overtime claims would be worth an additional: **$56,439.00**. ($1.00 (under payment per hour of OT) x 1 (OT Hours) x 56,439 (workweeks for Hourly Class)). But Plaintiff's allegations of systematic violations and that Defendant failed to include commissions and bonuses suggest that she thinks this number is much higher.

33. Thus, even before taking into account any attorneys' fees (and not taking into account Plaintiff's business expense reimbursement claims), a very conservative estimate of Plaintiff's claims reveals that the total amount in controversy is **$5,249,107.32.** And using a 100% violation rate for Plaintiff's meal and rest break claims, the total amount in controversy would be **$9,387,214.80**.

### 6. Attorneys' Fees

34. The Complaint also seeks attorneys' fees under all seven purported claims. (Compl. at Prayer.) Requests for attorneys' fees may be taken into account in ascertaining the amount in controversy for purposes of removal. *Longmire v. HMS Host U.S., Inc.*, Case No., 12-cv-2203, 2012 WL 5928485, at * 9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be

10
NOTICE OF REMOVAL / CASE NO.
39270098v.1

incurred when analyzing disputes over amount in controversy under CAFA.") (citing *Brady v. Mercedes-Benz USA, Inc.,* 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002)); *Muniz v. Pilot Travel Centers LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007) (attorneys' fees appropriately included in determining amount in controversy).

35. In the class action context, courts have found that 25% of the aggregate amount in controversy is a benchmark for attorneys' fees awards under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); see also *In re Quintas Securities Litigation*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25% of the common fund).

36. Thus, even under the conservative benchmark of 25% of the total recovery, attorneys' fees based on the amount in controversy established above using conservative estimates is **$1,312,276.83** [$5,249,107.32 x .25]. And using the amount in controversy assuming a 100% violation rate on Plaintiff's meal and rest break claims, the attorneys' fees would be **$2,346,803.70** [$9,387,214.80 x .25].

37. Accordingly, adding these numbers to both the conservative estimate and the estimate that assumes a 100% violation rate on meal and rest break claims, the total amount in controversy is either **$6,561,384.15** (conservative) or **$11,734,018.50** (100% violation rate). Therefore, the amount Plaintiff has placed in controversy easily satisfies CAFA's $5,000,000 requirement.

## VENUE

38. Venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 1441, 1446(a), and 84(c)(2). This action originally was brought in the Superior Court of the State of California, County of Los Angeles. Therefore, it is properly removed to this district.

## NOTICE OF REMOVAL

39. This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Los Angeles.

## PRAYER FOR REMOVAL

WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of Los Angeles to the United States District Court for the Central District of California.

DATED: May 31, 2017

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ Christian J. Rowley
Christian J. Rowley
Andrew M. McNaught
Michael W. Stevens

Attorneys for Defendant
AARON'S, INC.