**SHADIE L. BERENJI (SBN 235021)**
Email: berenji@employeejustice.law
**BRITTANEE A. MARKSBURY (SBN 315579)**
Email: marksbury@employeejustice.law
**BERENJI LAW FIRM, APC**
8383 Wilshire Boulevard, Suite 708
Beverly Hills, California 90211
Telephone: (310) 855-3270
Facsimile: (310) 855-3751

Attorneys for Plaintiff,
ARMINDA SEVILLA, individually
and on behalf of all other persons
similarly situated, and on behalf of
the general public.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMINDA SEVILLA, individually and on behalf of all other persons similarly situated, and on behalf of the general public, | Case No. 2:17-cv-04053-DMG-E *Assigned to Hon. Dolly M. Gee* |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| AARON'S, INC., a Georgia corporation, and DOES 1 through 30, inclusive; | |
| Defendant. | Date:     May 15, 2020 Time:     10:00 a.m. Courtroom: 8C |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................. 3

    A.   Plaintiff's Allegations .................................................. 3

    B.   Discovery and Investigation .......................................... 3

    C.   Mediation and Settlement ............................................. 5

    D.   Preliminary Approval ................................................... 5

III.   THE SETTLEMENT .............................................................. 6

IV.    SETTLEMENT ADMINISTRATION PROCESS ................................. 8

V.     ARGUMENT ...................................................................... 9

    A.   Notice Has Been Disseminated Pursuant to the Court-Approved
        Notice Plan ............................................................... 9

    B.   The Settlement Meets the Criteria for Final Approval .................. 10

        1.   The Strength of Plaintiff's Case, and the Risk, Expense,
            Complexity, and Likely Duration of Further Litigation ....... 12

        2.   The Risk of Maintaining Class Action Status Throughout the
            Trial ................................................................. 15

        3.   The Amount Offered in Settlement ....................................... 16

        4.   The Extent of Discovery Completed and Stage of Proceedings
            ........................................................................ 17

        5.   The Experience and Views of Counsel ................................. 19

        6.   The Reaction of Class Members to the Proposed Settlement
            …………………………………………………………………… 20

VI.    THE REQUESTED PAYMENT TO THE LWDA IS REASONABLE
      AND SHOULD RECEIVE FINAL APPROVAL ................................. 20

i

VII.   THE REQUESTED PAYMENT TO THE SETTLEMENT
       ADMINISTRATOR IS REASONABLE  .................................................. 21

VIII.  CONCLUSION ......................................................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

1

# <u>TABLE OF AUTHORITIES</u>

2

3  **<u>Federal Cases</u>**

4  *Alberto v. GMRI, Inc.,*

5       2008 WL 4891201 (E.D. Cal. 2008) ........................................................ 17

6  *Bravo v. Gale Triangle, Inc.,*

7       2017 WL 708766 (C.D. Cal. 2017) ......................................................... 18

8  *Chavez v. PVH Corp.,*

9        2015 WL 9258144 (N.D. Cal. 2015) ...................................................... 17

10  *Chu v. Wells Fargo Investments, LLC,*

11       2011 WL 672645 (N.D. Cal. 2011) ........................................................ 21

12  *Cotton v. Hinton,*

13       559 F.2d 1326 (5th Cir. 1977) ............................................................... 16

14  *Doty v. Costco Wholesale Corp.,*

15       2012 WL 2117001 (C.D. Cal. 2007) ...................................................... 17

16  *Franco v. Ruiz Food Prods., Inc.,*

17       2012 WL 5941801 (E.D. Cal. 2012) ...................................................... 21

18  *Glover v. City of Laguna Beach,*

19       2018 WL 6131601 (C.D. Cal. 2018) ...................................................... 10

20  *Gray v. Los Angeles Federal Credit Union,*

21       2017 WL 3159084 (Los Angeles Cnty. Super. Ct. 2017) ........................ 17

22  *Hanlon v. Chrysler Corp.,*

23       150 F.3d 1011 (9th Cir. 1998) ....................................................... 10, 11, 13

24  *Hicks v. Toys 'R' Us–Delaware, Inc.,*

25       WL 4703915 (C.D. Cal. 2014) ..................................................... ….21

26  *Hopson v. 7 Hanesbrands Inc.,*

27       2009 WL 928133 (N.D. Cal. 2009) ....................................................... 20

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

*In re Tableware Antitrust Litig.,*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................... 10

*Lane v. Facebook, Inc.,*
    696 F.3d 811, 823 (9th Cir. 2012) ............................................................. 12

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998) ................................................................... 16

*Ko v. Natura Pet Prods., Inc.,*
    2012 WL 3945541 (N.D. Cal. 2012) .......................................................... 17

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523, 526 (C.D. Cal. 2004) ................................................. passim

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) ........................................................ 11, 12, 16

*Rodriguez v. West Publishing Corp.,*
    563 F.3d 948, 966 (9th Cir. 2009) ............................................................. 15

*Schiller v. David's Bridal, Inc.,*
    2012 WL 2117001 (E.D. Cal. 2012) .......................................................... 17

*Scott v. HSS Inc.,*
    2017 WL 7049524 (C.D. Cal. 2017) .......................................................... 17

*Smith v. A-Check Am. Inc.,*
    2017 WL 3610592 (C.D. Cal. 2017) ..................................................... 10, 15

*Sorenson v. PetSmart, Inc.*
    2012 WL 2117001 (E.D. Cal. 2008) .......................................................... 17

*Spann v. J.C. Penney Corp.,*
    211 F. Supp. 3d 1244 (C.D. Cal. 2016) ..................................................... 19

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ..................................................................... 11

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Todd v. STAAR Surgical Co.,*
    2017 WL 4877417 (C.D. Cal. 2017) ......................................... 12

*Torrisi v. Tuscon Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ..................................................... 10

*Williams v. Centerplate, Inc.,*
    2013 WL 4525428 (S.D. Cal. 2013) .......................................... 17

*Wren v. RGIS Inventory Specialists,*
    2011 WL 1230826 (N.D. Cal. 2011) .........................................17

**California Cases**

*Carrington v. Starbucks Corp.,*
    30 Cal.App.5th 504 (2018) ....................................................... 21

**Federal Rules**

Fed. R. Civ. P., Rule 23 .........................................................9, 10, 15

**California Statutes**

Cal. Lab. Code § 2699(i) ........................................................... 20

**Other Authorities:**

3 W. Rubenstein & A. Conte & H. Newberg,
    *Newberg on Class Actions* (5th ed. 2013) ................................. 10

4 A. Conte & H. Newberg,
    *Newberg on Class Actions* (4th ed. 2002) ................................. 13

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This motion seeks the Court's approval of a wage and hour class action settlement reached between Plaintiff ARMINDA SEVILLA ("Plaintiff") and Defendant AARON'S, INC. ("Defendant") (collectively, the "Parties") on behalf of all current and former employees employed by Defendant in the State of California who were compensated by the hour from April 28, 2013 to January 31, 2020 (the "Class" or "Class Members").   The Class also includes all former employees of Defendant who were compensated by the hour in the State of California who ended their employment with Defendant from April 28, 2013 to January 31, 2020 (the "Waiting Time Subclass").

On January 31, 2020, the Court issued an order granting Plaintiff's Unopposed Motion for an Order: (1) Preliminarily Approving the Class Action Settlement; (2) Approving the Class Action Settlement Notice; and (3) Setting a Final Approval Hearing ("Order Preliminarily Approving Class Action Settlement").   Dkt. No. 97; *see* Declaration of Shadie L. Berenji in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement ("Berenji Decl."), ¶ 12.   Under the Class Action Settlement Agreement and Release of Claims ("Settlement" or "Settlement Agreement"), Defendant agreed to pay a maximum of Five Million One Hundred Thousand Dollars ($5,100,000) in exchange for a release of various claims alleged in Plaintiff's operative class action complaint.   Berenji Decl., ¶¶ 10, 15.

The Court also preliminarily approved a service award of Fifteen Thousand Dollars ($15,000) to Plaintiff; administration expenses incurred by the Settlement Administrator up to Twenty Five Thousand Dollars ($25,000); California Private Attorneys General Act of 2004 ("PAGA") penalties in the amount of Five Hundred Ten Thousand Dollars ($510,000); an attorneys' fee award of one-third of the Gross Settlement Fund (i.e., $1,700,000); and, litigation costs up to Fifty

Thousand Dollars ($50,000)[1]. Berenji Decl., ¶¶ 16, 18-21.

In addition, the Court ordered that the Settlement Administrator distribute the Class Notice to the Class.  *See* Berenji Decl., ¶ 22; Exhibit A.  Accordingly, the Court-approved Class Notice was mailed to the one thousand four hundred seven (1,407) Class Members by the Court-ordered deadline of February 14, 2020.  *See* Declaration of Jennifer Mills for Rust Consulting, Inc. ("Mills Decl.") filed concurrently herewith, ¶ 10.  The date for Class Members to file objections or opt-outs with the Court and the Settlement Administrator was March 30, 2020. *Id*.; Berenji Decl., ¶ 25.  As of this date, there have been **zero (0) objections and zero (0) opt-outs to the Settlement**.  Mills Decl., ¶¶ 15-16; Berenji Decl., ¶ 25.

An objective evaluation of the Settlement confirms that the relief negotiated on behalf of the Class is fair, adequate, and reasonable.  Berenji Decl., ¶ 26.  The Settlement is the product of diligent efforts by Class Counsel to obtain the best consensual resolution for the Class and it confers a substantial <u>monetary</u> benefit to the Class.  Berenji Decl., ¶ 15.  Indeed, the average recovery will provide a class member with approximately One Thousand Nine Hundred Sixty-Five Dollars and Seventy-Eight Cents ($1,965.78) and the highest individual payment amount is approximately Eleven Thousand Four Hundred Sixty-Two Dollars and Twenty Cents ($11,462.20).  Mills Decl., ¶18; Berenji Decl., ¶ 33. The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases. Because the Settlement is fair, adequate, and reasonable, and is the product of arms' length negotiations between attorneys experienced in wage and hour class action litigation, final approval should be granted.

Accordingly, Plaintiff respectfully requests that the Court: (1) grant this motion for final approval of class action settlement; (2) grant final approval of the

---

[1] Unless indicated otherwise, all capitalized terms herein shall have the same meaning as those defined by the Settlement Agreement.  *See* Docket 90-2, Exhibit 1.

Settlement Administration costs; (3) grant final approval of the PAGA penalties and payment to the California Labor and Workforce Development Agency ("LWDA"); (4) enter judgment pursuant to the Settlement; and, (5) retain jurisdiction to enforce the Settlement.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Plaintiff's Allegations

On April 28, 2017, Plaintiff filed a Class Action Complaint for Damages in the Superior Court of California, County of Los Angeles against Defendant Aaron's, Inc., entitled *Arminda Sevilla v. Aaron's, Inc.*, case number BC659590. Berenji Decl., ¶ 3.  On May 31, 2017, Defendant removed this action to the United States District Court, Central District of California.  *Id.*  On September 25, 2017, Plaintiff filed a First Amended Class Action Complaint for Damages in which Plaintiff added a PAGA claim.  *Id.* at ¶ 4.  Plaintiff filed a Second Amended Class Action Complaint for Damages ("Second Amended Complaint") on February 21, 2018.  *Id.* at ¶ 5.  The Second Amended Complaint added a cause of action for failure to pay overtime wages under the Fair Labor Standards Act ("FLSA") and failure to pay vested vacation wages.  *Id.*

Plaintiff's Second Amended Complaint alleged that Defendant engaged in the following unlawful conduct: (i) failure to pay overtime wages pursuant to the California Labor Code; (ii) failure to pay overtime wages pursuant to the FLSA; (iii) failure to pay vacation wages; (iv) failure to reimburse business expenses; (v) failure to provide rest periods; (vi) failure to provide meal periods; (vii) failure to timely pay wages; (viii) failure to maintain payroll records and provide accurate wage statements; (ix) violation of the California Unfair Competition Law; and, (x) a claim under PAGA.  Berenji Decl., ¶ 6.

### B.  Discovery and Investigation

In order to fully evaluate and substantiate her claims, Plaintiff conducted substantial informal and formal discovery.  Berenji Decl., ¶ 35.  Class Counsel

3

propounded extensive written discovery, including more than one hundred requests for production of documents, request for admissions, and special interrogatories. *Id.* Defendant in turn provided Plaintiff with more than 15,000 pages of information, including all relevant company policies and procedures, employee handbooks, and documents regarding Aaron's logoed apparel. *Id.*

Moreover, in preparation for the Parties' first mediation, the Parties' agreed to the production of nine hundred thirty-five (935) Class Members' payroll and time records for the fourth quarter of 2013 to 2017 and the first quarter of 2018. Berenji Decl., ¶ 35. Defendant also provided: (1) the total number of Class Members; (2) Class Members' hire and termination dates; (3) the total number of terminated employees; (4) the average rate of pay; (5) the total workweeks; (6) the total number of pay periods; (7) the total amount paid by Class Members for Aaron's logoed shirts; and, (8) information explaining Defendant's monthly premium overtime calculation. *Id.* In preparation for the second mediation, more than a year later, the Parties agreed that the production of: (1) wage statements, final paychecks, and termination forms for twenty-five percent (25%) of the Class; and (2) California Labor Code section 2810.5 notices for ten percent (10%) of the Class, would provide an adequate sample. *Id.* Defendant also provided spreadsheets containing: (1) the total number of Class Members; (2) Class Members' hire and termination dates; (3) Class Members' payroll data; and, (4) Class Members' time records from April 28, 2013 to present. *Id.*

Class Counsel and its experts spent a substantial amount of time analyzing the information and data provided by Defendant, and based on this information, Class Counsel drafted two detailed briefs that set forth Plaintiff's evidence, the relevant law, and legal arguments in preparation for the Parties' two separate mediations. Berenji Decl., ¶ 36. In conjunction, Class Counsel also prepared a comprehensive damages analysis for both mediations. *Id.*

///

### C.    <u>Mediation and Settlement</u>

On June 5, 2018, the Parties participated in a private mediation with Michael E. Dickstein, Esq., an esteemed mediator well-versed and experienced in employment wage and hour class actions, but were unable to settle the claims. Berenji Decl., ¶ 7.

In the fourteen (14) months following the Parties' first mediation session, Class Counsel aggressively litigated the matter and obtained class certification. Berenji Decl., ¶ 8. In preparation for Plaintiff's class certification motion, Class Counsel propounded additional written discovery and took the depositions of three individuals Defendant had designated as its Federal Rules of Civil Procedure ("FRCP") Rule 30(b)(6) Persons Most Knowledgeable ("PMK"). *Id.* Ultimately, the additional discovery conducted by Class Counsel produced information which strengthened Plaintiff's motion and class certification was obtained on March 25, 2019. *Id.*; *see also,* Dkt. No. 85.

On August 29, 2019, the Parties attended their second private mediation with Mr. Dickstein in Toronto, Canada. Berenji Decl., ¶ 9. The mediation ended with a mediator's proposal that the parties accepted five days later. *Id.* The Parties ultimately agreed to a maximum settlement valuation of $5,100,000 in order to avoid the uncertainties, costs, and burdens of further litigation. *Id.* at 10. During negotiations, the Parties agreed the settlement would not encompass the meal and rest break violation claims brought by Plaintiff. *Id.* at ¶ 9. The Parties ultimately memorialized their agreement in a comprehensive Settlement Agreement that was fully executed on December 20, 2019. *Id.*

### <u>Preliminary Approval</u>

On December 27, 2019, Plaintiff filed a motion requesting preliminary approval of the Settlement ("Motion for Preliminary Approval"). Berenji Decl., ¶ 11; *see* Dkt. No. 90. On January 31, 2020, the Court issued an order: (1) preliminarily approving the class action settlement; (2) approving the Class

5

Notice; and, (3) setting a final approval hearing.  Berenji Decl., ¶ 12; *see* Dkt No. 97, Order Preliminarily Approving Class Action Settlement.

## III.   **THE SETTLEMENT**

The Settlement in this action provides extensive monetary relief to the Class Members and resolves all but two class and representative claims[2].  Berenji Decl., ¶ 13.  The principal material terms are as follows:

1.     The Class includes all current and former employees employed by Defendant in the State of California who were compensated by the hour from April 28, 2013 to January 31, 2020.  *See* Dkt. No. 90-2, Exhibit 1 at ¶ 2; Berenji Decl., ¶ 14.  The Class additionally includes a Waiting Time Subclass which is made up of all former employees of Defendant who were compensated by the hour in the State of California who ended their employment with Defendant from April 28, 2013 to January 31, 2020.  *See* Dkt. No. 90-2, Exhibit 1 at ¶ 2(a); Berenji Decl., ¶ 14.  There are approximately 1,407 Class Members.  Berenji Decl., ¶ 14.

2.     Defendant will pay $5,100,000, inclusive of Class Counsel's attorneys' fees and costs, the service award to the Class Representative, the amount to be paid to the LWDA in connection with PAGA, and the Settlement Administrator's fees.  Dkt. No. 90-2, Exhibit 1, ¶ 27; Berenji Decl., ¶ 15.  Once these deductions are made, the balance of the Gross Settlement Fund will be available for distribution and be known as the "Net Settlement Fund."  Dkt. No. 90-2, Exhibit 1, ¶ 10; Berenji Decl., ¶ 15.

3.     The Net Settlement Fund will be distributed among Settlement Class Members on a pro rata basis based on the number of whole weeks each Settlement Class Member worked for Defendant during the Settlement Period.  Dkt. No. 90-2, Exhibit 1, ¶ 27c; Berenji Decl., ¶ 16.  The Settlement Class

---

[2] During negotiations, the Parties agreed the Settlement would not encompass the meal and rest period claims.

Members will share a Net Settlement Fund of approximately Two Million Nine Hundred Forty Thousand Eight Hundred Dollars ($2,940,800) without being required to submit a claim form.  Mills Decl., ¶ 17; Berenji Decl., ¶ 16.  The average estimated recovery to the individual Class Members is approximately $1,965.78 and the highest estimated recovery is approximately $11,462.20.  Mills Decl., ¶ 18; Berenji Decl., ¶ 33.

4.      Class Members who do not opt out of the Settlement will release Defendant and the Releasees from the claims that were alleged in Plaintiff's Second Amended Complaint, which occurred during the Settlement Period.  Dkt. No. 90-2, Exhibit 1, ¶ 47; Berenji Decl., ¶ 17.  However, this release does not apply to the Settlement Class with respect to the "Failure to Provide Rest Breaks" and "Failure to Provide Meal Periods" claims in the Second Amended Complaint. Berenji Decl., ¶ 17.  Plaintiff has executed a general release of all known and unknown claims she may have against Defendant and the Releasees for and in consideration of a service award payment for services she performed on behalf of the Settlement Class.  *Id.*

5.      The Parties have allocated $510,000 towards a release of the PAGA claims.  Berenji Decl., ¶ 18.  Seventy-five percent (75%) of the total amount allocated towards the PAGA claims (i.e. $382,500) will be paid from the Gross Settlement Fund to the LWDA for its share of the PAGA penalties negotiated and agreed upon.  Dkt. No. 90-2, Exhibit 1, ¶ 27(d); Berenji Decl., ¶ 18.  The remaining twenty-five percent (25%) will remain part of the Net Settlement Fund and be available for distribution to Class Members.  *Id.*

6.      Plaintiff will seek a class representative service award of $15,000. Dkt. No. 90-2, Exhibit 1, ¶ 27(b); Berenji Decl., ¶ 19.  Any service award granted will be paid from the Gross Settlement Fund.  Dkt. No. 90-2, Exhibit 1, ¶ 27; Berenji Decl., ¶ 19.

///

7.  Rust Consulting will administer the Settlement with the reasonable costs of administration, not to exceed $25,000, to be paid from the Gross Settlement Fund.  Dkt. No. 90-2, Exhibit 1, ¶ 17; Berenji Decl., ¶ 20.

8.  Class Counsel will seek an award of attorneys' fees equal to one-third (1/3) of the Gross Settlement Fund (i.e. $1,700,000) and costs not to exceed $50,000.  Dkt. No. 90-2, Exhibit 1, ¶ 27(a); Berenji Decl., ¶ 21.  Any award granted will be paid from the Gross Settlement Fund.  Dkt. No. 90-2, Exhibit 1, ¶ 27; Berenji Decl., ¶ 21.  If a lower amount is awarded, the difference will be distributed to the Class.  Dkt. No. 90-2, Exhibit 1, ¶ 27(a); Berenji Decl., ¶ 21.

## IV.  SETTLEMENT ADMINISTRATION PROCESS

In accordance with the Court's Order Preliminarily Approving the Class Action Settlement on January 31, 2020, the Settlement Administrator, Rust Consulting, distributed the "Notice of Proposed Class Action Settlement and Hearing for Court Approval" ("Class Notice") via United States First Class Mail to 1,407 Class Members.  Mills Decl., ¶ 10.  The Class Notice, which the Court previously approved, fairly and adequately described: (i) a summary of the substance of the Settlement, including the Class Representative service award, Class Counsel's fees and costs, the amount of the LWDA PAGA payment, and the Settlement Administrator's costs; (ii) the Class definition; (iii) the time, date and location for the final approval hearing; (v) the formula used for calculating the individual settlement payments; and, (vi) the procedure and deadline for submitting an objection or opt-out.  Berenji Decl. ¶ 22.  Additionally, Rust Consulting established a website – www.aaronsincsettlememt.com – to provide continuing information to Class Members.  Mills Decl., ¶ Id. at ¶ 23.  Rust Consulting posted the following documents on the website: (1) the Class Notice (Dkt. No. 95, Exhibit A); (2) the Settlement Agreement (Dkt. No. 90-2, Exhibit 1); (3) the Notice of Plaintiff's Unopposed Motion for Attorneys' Fees, Costs, and Class Representative Service Award and accompanying documents (Dkt.

8

Nos. 98, 98-1, 98-2, and 98-3); (4) the March 21, 2020 United States District Court, Central District's COVID-19 Notice from the Clerk; and, (5) the April 13, 2020 United States District Court, Central District's press release regarding measures being taken in response to the COVID-19 pandemic.  Mills Decl. ¶ 6; Berenji Decl., ¶ 24.

Plaintiff is pleased to report that there has been an overwhelmingly favorable response to the Settlement.  ***One hundred percent (100%) of the Class is entitled to receive a settlement payment*** because none of the Class Members submitted an objection or opted out of the Settlement.  Mills Decl., ¶¶ 15-16; Berenji Decl. ¶ 25.  The average recovery for the Settlement Class Members is approximately $1,965.78 and the highest individual payment amount is approximately $11,462.20.  Mills Decl., ¶ 18; Berenji Decl. ¶ 33.  This response speaks volumes as to the fairness, reasonableness, and adequacy of the Settlement and the clarity of the Class Notice.

## V.   <u>ARGUMENT</u>

### A.   <u>Notice Has Been Disseminated Pursuant to the Court-Approved Notice Plan</u>

Prior to granting final approval of a class action settlement, the Court must determine whether the notice provided to the Class Members was "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Class Notice, which the Court previously approved, fairly and adequately described: (i) information about the meaning and nature of the lawsuit; (ii) the settlement Class; (iii) the terms and provisions of the Settlement; (iv) the relief the Settlement will provide to Class Members who participate; (v) the method for calculating each participating Class Members' share of the Net Settlement Fund; (vi) the date, time, and place of the final settlement approval

hearing; (vii) the scope of the release to be provided by Class Members; and, (viii) the procedures for opting out of the Settlement and filing objections. Berenji Decl., ¶ 22, Exhibit A.  This Class Notice satisfies due process because it was reasonably calculated to apprise Class Members of the Settlement, the final approval hearing, how to object, and how to exclude themselves.  *See* Fed. R. Civ. P. Rule 23(c)(2), (e); *see also,* 3 William B. Rubenstein & Alba Conte & Herbert Newberg, *Newberg on Class Actions*, §§ 8:12, 8:15, 8:17, pp. 266-68, 272-73, 277-80 (5th ed. 2013).

## B.    The Settlement Meets the Criteria for Final Approval

Under Rule 23 of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled… only with the court's approval."  Fed. R. Civ. P. 23(e).  "A court should approve a settlement pursuant to Rule 23, subdivision (e), only if the settlement 'is fundamentally fair, adequate and reasonable.'"  *Smith v. A-Check Am. Inc.*, No. EDCV 16-00174-VAP (KKx), 2017 WL 3610592, at *3 (C.D. Cal. July 18, 2017) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)); *see also,* Fed. R. Civ. P. 23(e)(2)(C).  The Court has broad powers to determine whether a proposed settlement is fair under the circumstances of the case.  *See Torrisi*, *supra*, 8 F.3d at 1375.

The Settlement is within range of final approval where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *See In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *see also, Glover v. City of Laguna Beach*, No. SACV 15-01332 AG (DFMx), 2018 WL 6131601, at *2 (C.D. Cal. July 18, 2018); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998). Furthermore, courts must give "proper deference to the private consensual

decision of the parties," since "'the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon, supra,* 150 F.3d at 1027 (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

To determine whether a class action settlement is fair, adequate and reasonable, the Court looks to the following factors:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; … and the reaction of the class members to the proposed settlement.

*Officers for Justice*, *supra,* 688 F.2d at 625; *see also, Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, *supra*, 688 F.2d at 625.

Here, as further outlined below, the factors demonstrate that the Settlement is fair, reasonable, and adequate, and thus warrants final approval. Indeed, by granting preliminary approval, the Court has already determined that the Settlement is fair and reasonable, subject to objections, which are notably absent in this matter. *See* Dkt. No. 97, Order Preliminarily Approving Class Action Settlement ("The Settlement appears to fall within the range of possible approval

as fair, adequate, and reasonable, to be the product of arm's-length and informed negotiations and treat all Class Members fairly."); Berenji Decl., ¶ 26.  With zero objections and opt-outs to the Settlement as of this date, the Court's preliminary assessment has been separately endorsed by the Settlement Class.  Mills Decl., ¶¶ 15-16; Berenji Decl., ¶ 25.  Moreover, the fact that the Settlement was reached after arm's length negotiations also supports a finding that the Settlement is fair and reasonable. *See Todd v. STAAR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.") (internal quotation marks omitted)); Berenji Decl., ¶ 26.

Accordingly, the Court should find that the Settlement meets all the requirements for final approval and thus grant approval.

### 1.     The Strength of Plaintiff's Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

The first and second factors – the strength of the plaintiff's case balanced against the risk, expense, complexity, and likely duration of further litigation – support final approval.  While the Court must "assess the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation," the Ninth Circuit has cautioned that "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits…" and courts should refrain from reaching "any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012); *Officers for Justice*, *supra*, 688 F.2d at 625.  Moreover, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to

lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citing 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002) (internal quotation marks omitted).

Here, Plaintiff had already obtained class certification and was cautiously optimistic about the chances of prevailing at trial. Nevertheless, this case presented difficult and complex legal, factual, and procedural issues. Defendant vigorously contested its liability, the amount of claimed damages, and the manageability at trial. Berenji Decl., ¶ 27. Defendant raised a number of defenses and legal positions that presented significant threats to the claims of the Class and made the prospect of continued litigation appear very risky. *Id.* Plaintiff recognized that if litigation had continued, she might have encountered significant legal, factual, and procedural hurdles that could have prevented the Class from obtaining *any* recovery. *Id.* Where both sides face significant uncertainty, the attendant risks favor settlement. *Hanlon, supra*, 150 F.3d at 1026.

Plaintiff articulated, in detail, the strengths and risks of her case in her Motion for Preliminary Approval. *See* Dkt. No. 90-1 at 13:6-18:9; Berenji Decl., ¶ 28. In summary, Plaintiff alleges as follows:

- Defendant failed to pay overtime premiums on all earned incentive pay (i.e., commission, bonus) and/or incorrectly paid overtime premium wages on flat sum bonuses. Berenji Decl., ¶ 28.

- Defendant failed to pay vested vacation wages at the final rate of pay at the time of separation of employment due to its uniform policy and practice of failing to include bonus and/or commission compensation when calculating the regular rate of pay. Berenji Decl., ¶ 28.

- Defendant failed to reimburse Class Members for Aaron's logo shirt expenses which they necessarily incurred. Berenji Decl., ¶ 28.

- Defendant failed to timely pay wages at separation because Defendant did not provide compensation for overtime wages, vested vacation wages, meal break premiums, rest break premiums, and reimbursement of business expenses. Berenji Decl., ¶ 28.

- Defendant failed to provide Class Members with accurate itemized wage statements which accurately identified the amount of gross and net wages earned, all hours worked, all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by Class Members.  Berenji Decl., ¶ 28.

Defendant strongly denied that it failed to pay overtime premiums and stated that it correctly paid overtime premium wages on flat sum bonuses. Berenji Decl., ¶ 29.  Defendant also argued that it paid all vested vacation wages since the phrase "final rate" does not mean "regular rate" and therefore bonuses and commissions did not need to be included when calculating Class Members' final rates of pay.  *Id.*  Additionally, Defendant argued that its dress code policy did not require employees to purchase an Aaron's logo shirt and therefore the expense did not need to be reimbursed.  *Id.*  Defendant also stated Plaintiff lacked standing to maintain the California Labor Code section 202, subsection (a), claim and the late payment of Plaintiff's final wages was an aberration which did not typically occur.  *Id.*  Defendant also denied its liability under the failure to pay overtime and vested vacation wage claims and thus correspondingly denied that it ever owed the Class these wages at the time of termination or failed to provide Plaintiff with accurate itemized wage statements under those theories.  *Id.* Moreover, Defendant stated California Labor Code section 226, subdivision (a), does not require that the overtime premium formula and all associated components of the calculation be included on the wage statement.  *Id.*

Given that, to date, Defendant has vigorously litigated the case, if the Settlement had not been reached, the Parties would have faced a potentially

14

lengthy, costly, and complicated trial which, as with all trials, entailed the risk of a loss. Berenji Decl., ¶ 30. Moreover, even if Plaintiff was ultimately successful in litigating this matter to a favorable judgment after trial, the likelihood of recovery would not materialize until after a lengthy appellate process. *Id.* By contrast, the Settlement provides immediate benefits to Class Members, and immediate resolution to Defendant. *Id.* Under these circumstances, and in light of the risks to all Parties inherent in future litigation, it was reasonable for the Parties to elect to settle their difference in this manner to avoid further lengthy and expensive litigation. *Id.* Therefore, the first two factors – the strength of Plaintiff's case balanced against the risk and duration of further litigation – warrant approval of the Settlement.

## 2. The Risk of Maintaining Class Action Status Throughout the Trial

The third factor – the risk of maintaining class action status– also weighs in favor of approval of this Settlement. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time."); *see also, Smith*, *supra*, 2017 WL 3610592, at *4 ("Where there is a risk that class certification might not be maintained before entry of final judgment, this factor favors approving the proposed settlement."). Class Counsel aggressively litigated the matter and obtained class certification on March 25, 2019. Berenji Decl., ¶ 31. However, despite the Court granting certification, it remained free to decertify the Class at any time during trial. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Obviously, if the Court were to decertify the Class during the trial, the impact on the Class would be catastrophic. Berenji Decl., ¶ 31.

Given the attendant uncertainties in maintaining class certification through trial, the Settlement appears reasonable, and this factor favors final approval of

1    the Settlement.  Berenji Decl., ¶ 32.

2    ### 3.    The Amount Offered in Settlement

3    The next factor relevant to a consideration of the reasonableness of a

4    settlement – the amount offered – also supports a finding that the Settlement

5    should be approved.  In assessing whether the amount offered in a settlement

6    weighs in favor of final approval, "[t]he proposed settlement is not to be judged

7    against a hypothetical or speculative measure of what might have been achieved

8    by the negotiators."  *Officers for Justice*, *supra*, 688 F.2d at 625.  Indeed, "the

9    very essence of a settlement is compromise, 'a yielding of absolutes and an

10   abandoning of highest hopes.'"  *Id.* at 624 (citing *Cotton v. Hinton*, 559 F.2d

11   1326, 1330 (5th Cir. 1977)).  "The fact that a proposed settlement may only

12   amount to a fraction of the potential recovery does not, in and of itself, mean that

13   the proposed settlement is grossly inadequate and should be disapproved."

14   *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal

15   quotation and citation omitted).

16   Here, the substantive terms of the Settlement weigh in favor of approval.

17   The Settlement provides meaningful relief for the disputed claims and is well

18   within the range of reasonableness.  *See* Dkt. No. 97, Order Preliminarily

19   Approving Class Action Settlement ("The Settlement appears to fall within the

20   range of possible approval as fair, adequate and reasonable…").  The Settlement

21   calls for Defendant to pay $5,100,000 into a common fund to be divided among

22   the Class Members, after appropriate reductions for attorneys' fees and costs,

23   administration costs, and other awards.  Berenji Decl., ¶ 33.  Importantly, the

24   Class Members will share a non-reversionary Net Settlement Fund of

25   approximately $2,940,800, *without being required to submit a claim form*.  Mills

26   Decl., ¶ 17; Berenji Decl., ¶ 33.  The average payout to the individual Class

27   Members is approximately $1,965.78 and the highest payout is approximately

28   $11,462.20.  Mills Decl., ¶ 18; Berenji Decl., ¶ 33.  This recovery significantly

16

exceeds other wage and hour class action settlements approved by California courts. *See*, *e.g.*, *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, at *15, 37 (N.D. Cal. Apr. 1, 2011) (average net recovery of $207.69); *Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at * 17 (E.D. Cal. June 11, 2012) (average net recovery of approximately $198.70); *Scott v. HSS Inc.*, No. 8:14-cv-01911-JLS-RNB, 2017 WL 7049524, at *9 (C.D. Cal. Dec. 18, 2017) (average recovery was $197.07); *Chavez v. PVH Corp.*, 2015 WL 9258144, *2 (N.D. Cal. 2015) (average net recovery of $130.00); *Williams v. Centerplate, Inc.*, Case Nos. 11-CV-2159 H-KSC, 12-cv-0008-H-KSC, 2013 WL 4525428, at *4 (S.D. Cal. August 26, 2013) (average net recovery approximately $108); *Doty v. Costco Wholesale Corp.*, Case No. 05-cv-03241 FMC-JWJx (C.D. Cal. May 14, 2007) (as cited by *Schiller, supra*, 2012 WL 2117001, at *17) (average net recovery of $58); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. Dec. 17, 2008) (as cited by *Schiller*, *supra*, 2012 WL 2117001, at *17) (average net recovery of $57); *Gray v. Los Angeles Federal Credit Union*, No. BC625500, 2017 WL 3159084, at *4 (Los Angeles Cnty. Super. Ct. June 26, 2017) (average net recovery approximately $102); *Alberto v. GMRI, Inc.*, No. CIV 07-1895 WBS DAD, 2008 WL 4891201, at *9 (E.D. Cal. Nov. 12, 2008) (average net recovery of $80); *Ko v. Natura Pet Prods., Inc.*, No. C 09–02619 SBA, 2012 WL 3945541, at *14–15 (N.D. Cal. Sept. 10, 2012) (average net recovery of $35).

In light of the risks associated with continuing this litigation, the Settlement amount is reasonable and weighs in favor of approval of the Settlement.  Berenji Decl., ¶ 34.

### 4.   The Extent of Discovery Completed and Stage of Proceedings

"The extent of discovery may be indicative of the parties' knowledge of the case and is therefore relevant to determining the overall fairness of a settlement."

17

*Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 WL 708766 at *11 (C.D. Cal. Feb. 16, 2017).  "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  *Nat'l Rural Telecommunications Coop.*, *supra*, 221 F.R.D. at 528.

Here, in order to fully evaluate and substantiate her claims, Plaintiff conducted substantial informal and formal discovery.  Berenji Decl., ¶ 35.  As noted above, Plaintiff propounded extensive written discovery and received from Defendant more than 15,000 pages of information, including: (1) all relevant company policies and procedures and employee handbooks; (2) documents regarding Aaron's logoed apparel; (3) wage statements, final paychecks, and termination forms for twenty-five percent (25%) of the Class; and, (4) California Labor Code section 2810.5 notices for ten percent (10%) of the Class.  *Id*. Defendant additionally provided: (1) the total number of Class Members; (2) Class Members' hire and termination dates; (3) the total number of terminated employees; (4) the average rate of pay; (5) the total workweeks; (6) the total number of pay periods; (7) the total amount paid by Class Members for Aaron's logoed shirts; and, (8) information explaining Defendant's monthly premium overtime calculation.  *Id*.

Class Counsel and its experts spent a tremendous amount of time analyzing the information and data provided by Defendant, and based on this analysis, Class Counsel was able to realistically assess the value of Plaintiff's claims and intelligently engage defense counsel in settlement discussions that culminated in the proposed Settlement now before the Court.  Berenji Decl., ¶ 36.  By engaging in a thorough investigation and evaluation of Plaintiff's claims, Class Counsel can opine with confidence that the Settlement, for the consideration and on the terms set forth in the Settlement, is fair, reasonable, and adequate, and is in the best interest of Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, the risk that

18

that Court might decertify the classes already certified, the risk that the Court might determine that a trial was not manageable, the prospect of an adverse judgment on liability by the jury, and potential appellate issues.  *Id.* at ¶ 37. Accordingly, this factor also weighs in favor of final approval of the Settlement.

### 5.    The Experience and Views of Counsel

The sixth factor – the experience and views of counsel – also weighs in favor of approval of the Settlement.   "'Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.   This is because the parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"  *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1257 (C.D. Cal. 2016) (quoting *Nat'l Rural Telecommunications Coop.*, *supra*, 221 F.R.D. at 528).

Here, the Parties were represented by experienced class action counsel throughout the litigation and negotiations resulting in this Settlement.   Berenji Decl., ¶ 38.   Plaintiff was represented by Shadie L. Berenji and Brittanee A. Marksbury of the Berenji Law Firm, APC.   *Id.*   The Berenji Law Firm, APC regularly litigates wage and hour claims through certification and on the merits, and has considerable experience settling wage and hour class actions on behalf of both plaintiffs and defendants.   *Id.* at ¶¶ 38-44.   Defendant was represented by Seyfarth Shaw LLP, a prominent global law firm with extensive experience in wage and hour class actions.   *Id.* at ¶ 45.

After extensive litigation and negotiations, which required a balancing of the relative strengths of Plaintiff's claims and Defendant's defenses, and taking into account: (1) the risk of certification being reversed; (2) the risk of losing at trial; and, (3) the risk of prevailing at trial but being reversed on appeal, Class Counsel, based on its expertise and experience, determined that the Settlement was fair and reasonable.   Berenji Decl., ¶ 46.   Accordingly, this factor also

19

supports granting final approval of the Settlement.

### 6. The Reaction of Class Members to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecommunications Coop.*, *supra*, 221 F.R.D. at 529.   As noted above, the deadline to opt out or object was March 30, 2020, and none of the Class Members have opted out of or objected to any part of the Settlement.  Mills Decl., ¶¶ 15-16; Berenji Decl., ¶ 25.   This unequivocally demonstrates the Class Members' positive response to the Settlement and further supports final approval.

## VI. <u>THE REQUESTED PAYMENT TO THE LWDA IS REASONABLE AND SHOULD RECEIVE FINAL APPROVAL</u>

The settlement of the claim for penalties under PAGA for $510,000 is reasonable under the circumstances.  Berenji Decl., ¶ 47.  Under PAGA, the LWDA is entitled to 75% of any settlement of PAGA penalties.  *See* Cal. Lab Code § 2699(i).  The parties negotiated a good faith amount of $510,000 for PAGA penalties and this amount was not the result of self-interest at the expense of other putative Class Members.  Berenji Decl., ¶ 47.  Of this amount, 75% will be paid to the LWDA and 25% will be distributed to the Class Members.  *Id.* Where settlements "negotiate a good faith amount" for PAGA penalties and "there is no indication that this amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable.  *Hopson v. 7 Hanesbrands Inc.,* No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009) (approving payment of $1,500 or 0.3% of total settlement amount to the LWDA).

Moreover, the amount is well within the range of reasonable PAGA settlements approved by the courts.  Berenji Decl., ¶ 47; *see, e.g.*, *Hopson*, *supra*,

20

2009 WL 928133, at *1 (approving payment of 0.3% or $1,500 to the LWDA); *Chu v. Wells Fargo Investments, LLC,* Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA settlement payment of $7,500 to the LWDA out of $6.9 million common-fund settlement); *Hicks v. Toys 'R' Us–Delaware, Inc.,* Nos. CV13-1302-DSF (JCGx), EDCV 13-01159 DSF (JCGx), 2014 WL 4703915, at *1 (C.D. Cal. Sept. 2, 2014) (approving $5,000 PAGA payment in a case involving a $4 million settlement); *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *14 (E.D. Cal. Nov. 27, 2012) (approving PAGA penalties of $10,000 in $2.5 million common fund settlement and noting that amount was in line with settlement approval of PAGA awards in other cases); *Carrington v. Starbucks Corp.*, 30 Cal.App.5th 504, 529 (2018) (affirming trial court's decision to significantly reduce PAGA penalties from $50 to $5 per initial violation, reducing the requested $70 million in total penalties to $150,000, below even defendant's argument for minimal penalties of $200,000).

## VII.   THE REQUESTED PAYMENT TO THE SETTLEMENT ADMINISTRATOR IS REASONABLE

Pursuant to the Settlement, Class Counsel requests final approval of the cost of Settlement Administration in the amount of $25,000. Rust Consulting promptly and properly distributed the Class Notice to Class Members by first-class mail to their last known addresses, established the website with the Class Notice and related documents, and maintained telephone support through a toll-free telephone line. Mills Decl. ¶¶ 5-6, 10; Berenji Decl., ¶ 48. Additionally, upon final approval of the Settlement, Rust Consulting will be responsible for the distribution of the settlement payments, which include: setting up and maintaining a bank account for the balance of the Net Settlement Fund; calculating the individual disbursements to the Class Members; issuing and mailing checks and W-2s to the Class Members; processing returned checks; reissuing and remailing

checks and W-2s to the Class Members; handling federal and state tax reporting; performing accounting and maintenance of the Gross Settlement Fund account, reporting and annual tax preparation; and responding to the Internal Revenue Service and state agency inquires.  Berenji Decl., at ¶ 49.  Accordingly, a $25,000 payment is fair and reasonable and should be accorded final approval.

## VIII. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the motion for final approval of class action settlement.

DATE: April 17, 2020                    **BERENJI LAW FIRM, APC**


By:  */s/ Shadie L. Berenji*
         SHADIE L. BERENJI
         BRITTANEE A. MARKSBURY
         Attorneys for Plaintiff
         ARMINDA SEVILLA, individually and
         on behalf of all other persons similarly
         situated and the general public